**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KELLY SPURLOCK,**

     **Plaintiff,**

                                **Civil Action 2:20-cv-3981**
   **v.**                             **Judge Edmund A. Sargus, Jr.**
                                **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kelly Spurlock, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 19), Plaintiff's Reply (ECF No. 20), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.  BACKGROUND

Plaintiff previously filed applications for disability insurance benefits ("DIB") and SSI on May 7, 2010, alleging that she became disabled on September 13, 1977. (R. at 74–98.) On July 18, 2012, both applications were denied in a determination issued by Administrative Law Judge

Timothy G. Keller ("ALJ Keller").  (*Id.*)  The Appeals Council declined to review ALJ Keller's

determination, and Plaintiff apparently did not seek judicial review.  (R. at 99–102.)

Plaintiff protectively filed her current application for SSI on November 16, 2016, alleging

that she had been disabled since September 12, 2016.  (R. at 221–26.)  Plaintiff's application was

denied initially and upon reconsideration.  (R. at 103–119, 121–35.)  Administrative Law Judge

Melody Paige ("ALJ Paige") held a hearing on February 19, 2019, at which Plaintiff, who was

represented by counsel, appeared and testified.  (R. at 31–64.)  On April 11, 2019, ALJ Paige

issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security

Act.  (R. at 12–30.)  On June 9, 2020, the Appeals Council denied Plaintiff's request for a review

of ALJ Paige's decision, which became the Commissioner's final decision.  (R. at 1–6.)  Plaintiff

then timely commenced the instant action.

## II.    MEDICAL RECORDS

ALJ Paige summarized the medical records related to Plaintiff's physical impairments:

> The undersigned concedes that the claimant experiences diabetes mellitus,
> degenerative disc disease of the lumbar spine, and obesity.  The existence and
> persistence of these impairments, and their limiting effects, are corroborated in the
> claimant's medical history.  The [Plaintiff] has been diagnosed with diabetes
> mellitus (Exhibit B1F/6). An October 2016 magnetic resonance imaging scan
> (MRI) of her lumbar spine shows scoliosis and other degenerative changes and
> disc abnormalities (Exhibit B2F/13). She has presented herself with a body mass index,
> or BMI, above 30, indicative of obesity (Exhibits B1F/5,8; B11F/15; B12F/5). To
> treat her various impairments, she has been prescribed medication and has been
> recommended for an epidural steroid injection and physical therapy (Exhibits
> B3E/8; B1F/4,8; B3F/2; B6F/3; B10F/2; B11F/2; B12F/5) . . . .

(R. at 22.)  ALJ Paige likewise summarized the medical records related to Plaintiff's mental

impairments:

> The claimant has routinely presented herself with insignificant psychological symptoms, appearing alert and oriented; cooperating pleasantly with examiners; demonstrating normal mood, affect, judgment, memory, thought process, and thought content; denying experiencing anxiety or depression; and generally appearing to be in no acute distress (Exhibits BlF/6,10,14; B2F/3,5; B3F/3-4; B6F/4; B7F/2,4; B9F/l,3-5,16; Bl0F/2-5,7-10; Bl lF/9,13,17,21,29,37,41; Bl2F/5,41,67,103,137).

(R. at 18.)

### III.   ADMINISTRATIVE DECISION

On April 11, 2019, ALJ Paige issued her decision.  (R. at 12–30.)  In it, she initially noted that ALJ Keller had issued a final determination about Plaintiff's 2010 DIB and SSI applications.  (R. at 15.)  ALJ Paige also noted that pursuant to case law and agency policy, she was required to adopt ALJ Keller's findings in the absence of new and material evidence or changed circumstances.  (*Id.*)  But ALJ Paige concluded that there was new and material evidence that provided a basis for a different finding.  (R. at 16.)

At step one of the sequential evaluation process,[1] ALJ Paige found that Plaintiff had not engaged in substantially gainful activity since November 16, 2016.  (R. at 18.)  At step two, ALJ Paige found that Plaintiff had the following severe physical impairments:[2] diabetes mellitus; degenerative disc disease of the lumbar spine; and obesity.  (*Id.*)  ALJ Paige further determined that Plaintiff had the following medically determinable mental impairments but that they were not severe: borderline intellectual functioning, affective disorder, and anxiety disorder.  (*Id.*)  She further found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 20.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.     Is the claimant engaged in substantial gainful activity?
    2.     Does the claimant suffer from one or more severe impairments?
    3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
    5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

    [2] ALJ Paige found that Plaintiff's fibromyalgia was not severe.  (R. at 18.)  Plaintiff does not challenge that finding.

Before proceeding to step four, ALJ Paige set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and/or carry 20 pounds occasionally and ten pounds frequently. She can sit, stand, and/or walk for a total of six hours out of an eight-hour workday. She can occasionally climb ramps and stairs, stoop, kneel, and crawl but is precluded from climbing ladders, ropes, or scaffolds, working at unprotected heights, or around hazardous moving machinery. She can tolerate minimal exposure to gases and fumes.

(R. at 21.)

Relying on testimony from a vocational expert ("VE"), the ALJ found at steps four and five that even though Plaintiff had no past relevant work, she could perform jobs that existed in significant numbers in the national economy.  (R. at 23-25.)  ALJ Paige therefore concluded that Plaintiff had not been disabled within the meaning of the Social Security Act since November 16, 2017.  (R. at 25.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

In her Statement of Errors, Plaintiff alleges that remand is required because ALJ Paige erred when weighing medical opinion evidence and when performing a subjective symptom analysis / credibility determination.  (ECF No. 14, at PageID # 718–22, 723–26.)  Plaintiff also appears to assert that the ALJ's question to the vocational expert ("VE") was inaccurate.  (ECF No. 14, at Page ID # 763.)   None of these contentions of error warrants remand.

6

A.      **Medical Opinion Evidence from Drs. Cripe, Goldsmith, and Hoyle**

Plaintiff alleges that ALJ Paige's RFC determination is not supported by substantial

evidence because ALJ Paige erred when evaluating medical opinion evidence.  This allegation of

error lacks merit.

An ALJ must consider all medical opinions received in a claimant's case.  20 C.F.R. §

416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment

must always consider and address medical source opinions.").  The applicable regulations[3] define

medical opinions as "statements from physicians and psychologists or other acceptable medical

sources that reflect judgments about the nature and severity of your impairment(s), including your

symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your

physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  Regardless of the source of a

medical opinion, when weighing it, an ALJ must apply the factors set forth in 20 C.F.R. §

416.927(c)(2)–(6).  Those factors are the: (1) length of the treatment relationship and the

frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of

the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the

treating source; and (6) other factors.  § 416.927(c)(2)–(6).

Plaintiff alleges that ALJ Paige erred when weighing the opinion offered by consultative

examiner, Princess A. Cripe, Psy.D.  (ECF No. 14, at PageID # 720–22.)  Dr. Cripe opined that

Plaintiff had the ability to carry out simple instructions; could complete simple tasks if she set her

---

[3] Because Plaintiff's instant application was filed in 2016, it is governed by regulations applicable
to claims filed before March 27, 2017.

own pace; and would perform better in a more isolated/independent setting with minimal

demands.  (R. at 353–54.)  ALJ Paige analyzed and weighed Dr. Cripe's opinion as follows:

> In January 2019,[4] Dr. Cripe examined the claimant and said that she had significant
> limitations with regard to understanding and executing work instructions and
> moderate limitations in responding appropriately to work pressures in a work setting
> but could complete simple tasks if set at her own pace (Exhibit B3F/4–5).  The
> undersigned gives Dr. Cripe's opinion little weight because it is based largely on the
> claimant's self-reported symptoms and medical history and is largely unsupported
> by the evidence showing mild psychological symptoms and unlimited daily
> functioning (Exhibits B3E; B1F/6, 10, 14; B2F/3, 5; B3F/3–4; B6F/4; B7F/2; B9F/1,
> 3–5, 16; B10F/2–5, 7–10; B11F/9, 13, 17, 21, 29, 37, 41; B12F/5, 41, 67, 103, 137).

(R. at 19–20.)

The Undersigned finds no reversible error in this assessment.  Because a consultative

examiner usually meets with a claimant only once, he or she typically does not have an on-going

treatment relationship with a claimant that could trigger the deference owed to treating

physicians.  *Andres v. Comm'r of Soc. Sec.*, 733 F. App'x. 241, 245–46 (6th Cir. 2018) (the

absence of an on-going treatment relationship means "the ALJ is entitled to give less weight to

the consultative examiner's opinion") (citing *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x. 462,

467 (2017)).  And although a consultative examiners' opinions must be meaningfully evaluated

according to the factors set forth in § 416.927(c), an ALJ need not give "an exhaustive factor-by-

factor analysis."  *Kent v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 643, 650 (S.D. Ohio 2015)

(quoting *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011)).  Here, ALJ

Paige's discussion indicates that she considered the regulatory factors— she expressly determined

that Dr. Cripe's opinion was not supported by the record which largely documented mild

---

[4] It appears that the examination took place in January 2017.  (R. at 350.)

8

psychological symptoms and unlimited daily functioning.  (*Id.*)  Supportability is a key regulatory factor.

The Undersigned further finds that ALJ Paige's determination is supported by the record. The record indeed documents mild psychological functioning— examinations routinely found that Plaintiff had no psychomotor mood, affect, speech, or thought impediments.  (R. at 309, 314, 318, 322, 326, 330, 370, 434, 446, 450, 458, 466, 470, 474.)  Examinations also regularly found that Plaintiff appeared only mildly anxious.  (R. at 334, 338, 340, 380, 382, 384, 398, 400, 401, 402, 413, 417, 418, 419.)  At an examination on September 16, 2016, Plaintiff's mood and manner were appropriate.  (R. at 393.)  During Dr. Cripe's January 9, 2017, examination, Plaintiff's thoughts were logical, coherent, and organized and there was no evidence that she had a thought disorder; Plaintiff was able to think abstractly; and she was not distracted by noises and could follow simple instructions.  (R. at 352.)  On August 15, 2017, an examination found that Plaintiff had normal mood and affect.  (R. at 522.)  On October 25, 2017, Plaintiff's mood, affect, speech, behavior, thought content, judgment, cognition, and memory were all normal.  (R. at 546.)  On April 16, 2018, Plaintiff again had normal mood and affect.  (R. at 582.)  A December 4, 2018, examination found that Plaintiff had normal mood, affect, and behavior.  (R. at 616.)  On December 6, 2018, Plaintiff appeared anxious but her thought and perceptions were intact and appropriate.  (R. at 441.)  And although notes from several doctor visits in early 2017 described Plaintiff's anxiety as worsening (R. at 474, 470), notes from visits later that year and in 2018 described Plaintiff's anxiety as stable (R. at 467, 458, 453, 442).

Similarly, the record contains documents indicating that Plaintiff was able to engage in a variety of daily activities.  Plaintiff completed a function report on November 30, 2016, in which

she indicated that she prepared her own meals daily; did cleaning and laundry when prompted; shopped weekly for food and household items; and that she was able to count change, handle a savings account, and use a checkbook or money orders.  (R. at 257, 258.)  She further indicated that she visited with others weekly and did not need to be reminded to go places.  (R. at 260.)  During Dr. Cripe's January 9, 2017, Plaintiff denied any issues with household chores and that she stated that she was "OK" as long as she had her pain medications.  (R. at 352.)  On August 24, 2018, Plaintiff reported that she could perform activities of daily living with medication treatment.  (R. at 418.)  In addition, Plaintiff regularly reported that she engaged in exercise.  (R. at 309, 313, 317, 321, 325, 329, 333, 369, 440, 445, 449, 453, 457, 461, 465, 469, 473.)

ALJ Paige also discounted Dr. Cripe's opinion because it was based on Plaintiff's self-reports.  Substantial evidence also supports that determination.  Dr. Cripe opined that due to Plaintiff's limitations in maintaining attention, concentration, persistence, and pace, she would be able to complete simple tasks if she could set her own pace.  (R. at 353.)  When discussing that opined limitation, Dr. Cripe expressly noted that Plaintiff was able to maintain attention and concentration during her examination but that Plaintiff "reported having 'terrible' concentration and [was] 'unable to remember anything.'"  (*Id*.)  Moreover, Dr. Cripes noted that she did not perform any psychological testing.  (R. at 353.)  Therefore, ALJ Paige did not err by finding that Dr. Cripe's opinions, or at least some of them, were based on Plaintiff's self-reports.  (*Id*.)  *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016) (favorably discussed an ALJ's decision to discount a medical opinion that "relied heavily on . . . self-reporting, and

seemed to uncritically accept as true most, if not all, of what [claimant] reported." (internal

quotation marks and citation omitted)).

Plaintiff also asserts that ALJ Paige erred when weighing opinions from the state agency

reviewers, Bruce Goldsmith, Ph.D., and Tonnie Hoyle, Psy.D. (ECF No. 14, at PageID # 720–

21.) Drs. Goldsmith and Hoyle both opined that Plaintiff was able to perform simple routine

tasks that did not require strict production or time standards in a static environment where

changes were infrequent and could be explained. (R. at 114–15, 132–33.) ALJ Paige analyzed

and weighed those opinions as follows:

> At the initial level, Dr. Goldsmith reviewed the mental impairment evidence in
> February 2017 and determined that the claimant experienced severe mental
> impairments that affected the claimant's ability to perform simple, routine tasks
> (Exhibits B3A/13–14; B4A13–14). At the reconsideration level, Dr. Hoyle
> reviewed the evidence in April 2017 and affirmed Dr. Goldsmith's assessment
> (Exhibits B5A/1–13; B6A/11–13). The undersigned gives their opinions little
> weight because the evidence, most notably the claimant's mild psychological
> symptoms and lack of notable treatment, does not support the existence of severe
> mental impairments (Exhibits B1F/6, 10, 14; B2F/3, 5; B3F/3–4; B6F/4; B7F/2, 4;
> B9F/1, 3–5, 1; B10F/2–5,7–10; B11F/9, 13, 17, 21, 29, 37, 41; B12F/5, 41, 67, 103,
> 137.)

(R. at 19.)

ALJ Paige did not commit reversible error when analyzing these opinions.

"[T]he opinions of non-examining state agency medical consultants have some value and can,

under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.,* 832

F.Supp. 2d 813, 823–24 (S.D. Ohio 2011). This is because the Commissioner views such medical

sources "as highly qualified physicians and psychologists who are experts in the evaluation of the

medical issues in disability claims under the [Social Security] Act." *Id.;* 20 C.F.R §

416.927(d),(f). "Consequently, opinions of one-time examining physicians and record-

reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas,* 832 F. Supp. 2d at 823–24. Nevertheless, "there is no legal requirement for an ALJ to explain each limitation or restriction he [or she] adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Price v. Comm'r of Soc. Sec.*, 2:18-cv-128, 2019 WL 396415, at *2 (S.D. Ohio Jan. 31, 2019) (quoting *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio March 19, 2013) (citing *Ford*, 114 F. App'x. at 198.))

It is clear from ALJ Paige's discussion that she considered the regulatory factors— she determined that the opinions from Drs. Goldsmith and Hoyle were not supported by the record, which documented mild psychological symptoms and a lack of notable treatment. Again, supportability is a key regulatory factor. The Undersigned further finds that this determination was supported by the record. As discussed previously, the record reflects that Plaintiff experienced mild psychological symptoms. In addition, the record reflects a lack of "notable" treatment. During Dr. Cripe's January 9, 2017, examination, Plaintiff reported that she had participated in psychotherapy for less than one year in approximately 2013. (R. at 352.) Moreover, the record is bereft of evidence reflecting anything other than conservative treatment for Plaintiff's mental health issues.

Plaintiff relatedly contends that because ALJ Paige discounted the opinions from Drs. Cripe, Goldsmith, and Hoyle, she relied solely on her own lay opinion of the medical evidence when determining that Plaintiff's mental impairments did not result in restrictions. (ECF No. 14,

at Page ID # 715, 720.) The Sixth Circuit Court of Appeals has explained, however, that "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the [RFC] finding"; the ALJ need only "make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). That is, "the administrative law judge's residual functional capacity finding does not need to correspond to a particular physician's opinion." *Id.* (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge is required to base her determination on a physician's opinion)); *see also Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted*, 2017 WL 3172717 (S.D. Ohio July 25, 2017) ("[a]lthough the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion"). In this case, ALJ Paige made the required connection between the evidence and her determinations. That is all that the regulations require.

Plaintiff also notes that ALJ Keller relied on opinion evidence from other medical health professionals and determined that Plaintiff had work limitations that stemmed from her mental health impairments when ALJ Keller denied her prior application for benefits in 2012. (ECF No. 14, at PageID # 715–18.) Plaintiff seems to suggest that ALJ Paige erred by failing to also find that Plaintiff had limitations stemming from her mental health impairments based on the opinion evidence that was available to ALJ Keller. (*Id.*) But in *Earley v. Commissioner of Social Security*, the Sixth Circuit explained that an ALJ may, in the absence of new and additional evidence, consider a prior ALJ's findings legitimate, albeit not binding, when he or she reviews a

13

subsequent application. 893 F.3d 929 (6th Cir. 2018) (modifying *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)). Here, ALJ Paige expressly considered ALK Keller's prior determination about Plaintiff's mental health impairments and resulting limitations and gave it no weight because there was new evidence that provided the basis for a different finding. (R. at 16, 23.) ALJ Paige then discussed that new evidence throughout her determination. (R. at 18, 19–20, 23.) Plaintiff does not challenge ALJ Paige's application of *Drummond/Early*.       !

For all these reasons, the Undersignede does not find that the ALJ committed reversible error when weighing opinion evidence. Plaintiff's claim to the contrary lacks merit.

**B.     ALJ Paige's Subjective Symptom/Credibility Analysis**

Plaintiff alleges that the ALJ erred when assessing Plaintiff's subjective symptoms. This allegation of error also lacks merit.

The Sixth Circuit has provided the following guidance in considering an ALJ's subjective symptoms analysis or credibility assessment:[5]

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

---

[5] An ALJ's consideration of a claimant's statements about symptoms and limitations, generally known as credibility analysis, is required. But, as clarified by SSR 16-3p (applicable as of March 28, 2016), the focus is not on the claimant's propensity for truthfulness or character but rather on the consistency of her statements about the intensity, persistence, and limiting effects of symptoms with the relevant evidence. *See* SSR 16-3p, 2017 WL 5180304 at *2, *6, *11. Consequently, the Court uses the term "credibility" in the context of assessing the consistency between Plaintiff's statements about her symptoms and the evidence in the record.

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference." *Infantado v. Astrue*, 263 F. App'x. 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x. 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06-CV-1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the regulations list a variety of factors an ALJ must consider in

evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of

medication; and treatment other than medication.  20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996

WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10-cv-1792, 2011 WL 3843692, at *9

(N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors,

he or she is not required to discuss every factor within the written decision) *report and*

*recommendation adopted*, 2011 WL 3843703, (N.D. Ohio Aug. 30, 2011).

At the first part of the two-part analysis, ALJ Paige determined that Plaintiff had

medically determinable impairments that could reasonably be expected to cause her alleged

symptoms.  (R. at 22.)  But at the second part, ALJ Paige determined that Plaintiff's statements

concerning the intensity, persistence and limiting effects of those symptoms were not entirely

consistent with the medical and other evidence in the record.  (*Id*.)  Plaintiff alleges that when

ALJ Paige made that second determination, she failed to consider Plaintiff's medically

determinable mental health impairments.  (ECF No. 14, at PageID # 723.)

Plaintiff mischaracterizes ALJ Paige's subjective symptom analysis.  ALJ Paige explained

her analysis as follows:

The record does not substantiate the claimant's allegations of disabling impairments. While diagnostic findings corroborate the existence of severe physical impairments, other findings describe those findings in mild terms (Exhibits B2F/13; B4F/2; B5F; B12F/6, 17-19, 50, 107, 146-150). Upon examination, she has routinely presented herself with insignificant musculoskeletal symptoms, demonstrating normal gait with full strength and range of motion in her back and extremities with no edema (Exhibits B1F/6; B6F/3-4; B8F/7; B9F/l,3-5,16; B10F/2-5,7-10; B11F/4, 9, 13, 17, 21, 37, 41, 43, 67, 103, 137). Her back impairments have been described as stable and her diabetes well controlled (Exhibits B6F/3; B11F/16). She has been advised to lose weight and make healthier diet choices (Exhibits B7F/4; B9F/1). Despite routinely reporting that her back pain was a ten on a ten-point scale, she has also reported that her medication helped "take the edge off", helped with "quality of life", and left her able to perform her daily activities (Exhibits B9F/3; B10F/2-3). Despite being advised to undergo an epidural steroid injection and attend physical therapy, the [Plaintiff] was unable to do so (Exhibit B10F/2). The objective medical evidence does not support the alleged severity of the [Plaintiff]'s various impairments.

The claimant's daily functioning is less limited than one could reasonably expect, considering the scope and severity of her allegations. She reported being able to prepare meals, take care of her children, perform household chores, leave the house unaccompanied, shop in stores, and handle money (Exhibits B3E/2-5; B3F/3). *She reported spending time with others, has no issues getting along with others, and has been described as cooperative and pleasant by her various examiners* (Exhibits B3E/5-6; B3F/3; B12F/5). *She drives an automobile, suggesting that in addition to the various mental faculties she possesses*, she also has the physical strength, stamina, and dexterity to alternately open the vehicle door, sit in the driver's seat, manipulate the keys, turn the steering wheel, and operate the pedals (Exhibits B3E/4; B3F/l,3). The totality of the evidence does not support the claimant's allegations but instead corroborates the existence of severe impairments that limit, but do not wholly defeat, the claimant's ability to perform basic work activities.

(R. at 22.) (emphasis added).

As this discussion illustrates, ALJ Paige explicitly, albeit briefly, discussed the severity of

Plaintiff's mental health symptoms. ALJ Paige noted that Plaintiff drove, and that this evidenced

that she had the mental faculties to do so. (*Id.*) In addition, ALJ Paige noted Plaintiff's social

interactions— which is one of the four broad areas of mental functioning. (*Id.*) For these

reasons, it appears that ALJ Paige considered the impact of Plaintiff's mental health impairments

when performing a subjective symptom analysis / credibility determination.  The Undersigned further finds that ALJ Paige's discussion was supported by the record which contains evidence that Plaintiff reported spending time with others (R. at 260), had no issues getting along with others including authority figures (R. at 351, 261), and that Plaintiff was described by providers as cooperative, pleasant, or polite (R. at 352, 485, 580).

Plaintiff also asserts that ALJ Paige erred when analyzing effects of Plaintiff's physical impairments at the second part of the credibility determination.  (ECF No. 14, at PageID # 724–25.)  But with regard to Plaintiff's physical impairments, ALJ Paige explained that Plaintiff routinely presented with insignificant musculoskeletal symptoms.  (R. at 22.)  Substantial evidence supports that explanation.  Medical records noted that Plaintiff only had lumbar paraspinal "tenderness" with palpitation, and that seated slump tests were only "mildly positive bilaterally."  (R. at 338, 384, 398, 400, 401, 402, 413, 417, 418, 419.)  ALJ Paige also noted that Plaintiff also routinely presented with full strength and range of motion in her back and extremities.  (R. at 22.)  The record also supports that determination.  Medical examinations routinely found that Plaintiff's upper and lower extremities were symmetrical in appearance and strength (R. at 326, 370, 441, 446, 450, 454, 458, 474), and a number of examinations found that Plaintiff had normal ranges of motion (R. at 393, 522, 546, 582, 616).  ALJ Paige further noted that Plaintiff routinely presented with no edema.  (R. at 22.)  The record also reflects the accuracy of that statement.  (R. at 310, 314, 322, 326, 330, 333, 370, 441, 446, 450, 454, 458, 466, 470, 474, 616).  ALJ Paige noted that Plaintiff's back impairments were described as stable.  (R. at 22.)  The record reflects that on March 9, 2017, Plaintiff's degenerative disc disease was

described as "stable;" on December 19, 2017, it was described as "chronic" but "mild" (R. at 453). ALJ Paige further noted that Plaintiff reported that her medication helped "take the edge off," helped with her "quality of life," and left her able to perform her daily activities. (R. at 22.) Again, that accurately reflects evidence that exists in the record. (R. at 400, 417, 398.)

Other objective evidence lends support to ALJ Paige's determination that Plaintiff's physical impairments were not disabling. For instance, an MRI on October 16, 2016, revealed mild scoliosis, a mild chronic appearing T12 compression fracture, and mild degenerative changes and disc abnormalities, but no dominant disc protrusions or high-grade stenosis. (R. at 348.) X-rays of Plaintiff's hips and pelvis on August 15, 2017, showed that Plaintiff's lower lumbar spine was normal in appearance. (R. at 528, 529.) In short, the record evidence supports ALJ Paige's assessment of the severity of Plaintiff's physical symptoms.

Plaintiff contends that ALJ Paige "misquoted" medical records when determining that her physical symptoms were not disabling. (ECF No. 14, at Page ID # 724.)[6] It is clear, however, that the record evidence cited by ALJ Paige supported some of her determinations about Plaintiff's musculoskeletal symptoms even if each piece of cited evidence did not support every one of her determinations. ALJ Paige's discussion made a logical bridge between the record evidence and her subjective symptom analysis such that the Court can follow her reasoning. That is all that is required.

---

[6] Plaintiff further notes that ALJ Paige erred by citing to pages 43, 67, 103, and 107 in Exhibit B11F because that Exhibit only has 42 pages. (ECF No. 14, at Page ID # 724.) It appears that ALJ Paige intended to cite those pages in Exhibit B12F. But such typographical errors do not undermine ALJ Paige's determinations or impair this Court's ability to review them.

19

Plaintiff also alleges that ALJ Paige erred by failing to discuss contrary evidence including abnormal physical examination findings.  (ECF No. 14, at PageID # 724–25.)  It is well established, however, that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [her] decision."  *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citations omitted)).  The Sixth Circuit has further explained that,

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (*quoting Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999) (citations and internal quotation marks omitted)).  Although ALJ Paige did not specifically address every piece of evidence about Plaintiff's physical symptoms in the record, her determination indicates that she considered the record as a whole.  Moreover, ALJ Paige incorporated into Plaintiff's RFC the physical limitations that were opined by the state agency reviewers, thus demonstrating that she did not completely ignore evidence that Plaintiff's physical impairments caused her some limitations.  (R. at 21, 23, 113–14, 129–31.)

Plaintiff contends that ALJ Paige erred by considering her daily functioning and determining that it was "less limited than one would reasonably expect, considering the scope and

20

severity of her allegations." (ECF No. 14, at Page ID # 725 (quoting R. at 22).)  Plaintiff

essentially asserts that ALJ Paige mischaracterized Plaintiff's reports about the extent of her daily

activities and ignored Plaintiff's hearing testimony about the same.  (*Id*.)  The Undersigned is not

persuaded.  ALJ Paige summarized Plaintiff's statements to the agency and the relevant hearing

testimony about how her daily activities were limited.  ALJ Paige wrote:

> The [Plaintiff] complains of physical pain, depression, respiratory issues, and
> difficulties with focus, memory, and concentration, all of which affect her abilities
> to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs (Exhibits B3E/5;
> Hearing Testimony (HT)). She reported being unable to lift more than ten pounds,
> walk more than 30 feet without before needing to rest and cannot bend or squat at
> all (Exhibit B3E/l, 5). She cannot pay attention for more than five minutes at one
> time, does not finish what she starts, has difficulty with both written and spoken
> instructions, and cannot adequately handle changes in routine or stressful situations
> (Id. at 5,7) . . . .

(R. at 22.)  ALJ Paige also discussed other evidence of about Plaintiff's activities including that

she prepared meals, cared for her children, performed household chores, shopped, handled

money, and drove.  (R. at 22–23.)  The record reflects that Plaintiff reported engaging in such

activities.  (R. at 257, 258, 352.)  In short, ALJ Paige considered and weighed conflicting

evidence about the extent of Plaintiff's activities and determined that Plaintiff's subjective

complaints did not warrant further restrictions in her RFC. (R. at 23.)  It was proper for ALJ Paige

to weigh conflicting evidence.  Accordingly, the Undersigned finds that ALJ Paige did not err

when considering Plaintiff's activities of daily living.  *See Walters v. Comm'r of Soc. Sec*., 127 F.

3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged

in by the claimant when evaluating a claimant's assertions of pain or ailments.")

21

For all these reasons, the Court does not find that the ALJ committed reversible error when performing the subjective symptom analysis/ credibility determination.  Plaintiff's claim to the contrary lacks merit.

### C.     The Hypothetical Posed to the VE

Plaintiff also appears to challenge ALJ Paige's reliance on the VE's testimony at step five because the hypothetical question she posed to the VE did not accurately portray the RFC that she assessed for Plaintiff.  (ECF No. 14, at PageID # 727–27; ECF No. 20, at PageID # 763.)  To the extent Plaintiff makes such a challenge, her claim lacks merit.[7]

At step five, an ALJ determines if a claimant can perform work that exists in the national economy.  An ALJ may rely on a VE's testimony indicating that a claimant can perform a number of jobs in the national economy despite his limitations "[s]o long as the hypothetical is accurate." *Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 680 (6th Cir. 2013).  *See also Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428–29 (6th Cir. 2014) ("A vocational expert's testimony *in response to an accurate hypothetical* represents substantial evidence that the claimant has the vocational

---

[7] In her Statement of Errors, Plaintiff alleged that because ALJ Paige's RFC determination was not supported by the record, ALJ Paige could not rely on the testimony that she elicited from the VE in response to her hypothetical questions.  (ECF No. 14, at PageID # 726–27.)  In her Reply, Plaintiff alleges that the hypothetical question posed by ALJ Paige to the VE did not accurately portray the RFC that ALJ Paige ultimately assessed.  (ECF No. 20, at PageID # 763.)  These are different contentions or error.  It is not permissible for a party to raise a new issue in a Reply. *See, e.g., Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008) (issues raised for first time in reply briefs are waived); *Hamilton v. Astrue,* No. 1:09CV260, 2010 WL 1032646, at *6 (N.D. Ohio Mar.17, 2010) ("A reply brief is a plaintiff's opportunity to respond to arguments raised for the first time in the defendant's brief. A plaintiff cannot wait until the reply brief to make new arguments, thus effectively depriving the opposing party of the opportunity to expose the weaknesses of plaintiff's arguments.").  Accordingly, to the extent Plaintiff is making this latter argument, it was waived when it was not included in the Statement of Errors.

22

qualifications to perform specific jobs.") (internal citations omitted) (emphasis added); *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) ("[T]he ALJ must include in the question an accurate calculation of the claimant's residual functional capacity—i.e., a description of what the claimant can and cannot do.") (internal citations and quotations omitted); *Felisky v. Bowen*, 35 F.3d 1027, 1035–36 ("[F]or a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant") (internal citation omitted).  Nevertheless, an ALJ's error in formulating a hypothetical question can be harmless if the hypothetical posed to the VE is more favorable to the claimant than the ALJ's RFC ultimate determination.  *Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 845 (6th Cir. 2005); *McVey v. Comm'r of Soc. Sec.*, No. 2:10–cv–231, 2011 WL 7568603, at *8 (E.D. Tenn. Oct. 18, 2011), *report and recommendation adopted*, 2012 WL 966484 (E.D. Tenn. Mar. 21, 2012) ("An error in formulating the hypothetical question can be harmless if the hypothetical is more favorable to the claimant than the ALJ's RFC determination.) (internal citation omitted).

Such is the case here.  ALJ Paige asked the VE if work existed in the national economy that could be performed by a hypothetical claimant who had the same age, education, and physical RFC as Plaintiff, but who also had additional mental limitations that ALJ Paige did not incorporate into Plaintiff's RFC (i.e., a limitation to simple tasks and instructions and the ability to concentrate for two-hour segments over an eight-hour work period).  (R. at 59–60.)  The VE testified that such an individual could perform the jobs of sorter, packer, and assembler and that those jobs existed in significant numbers in the national economy.  (R. at 60.)  ALJ Paige then relied on that testimony to determine that Plaintiff could perform other work that existed in

significant numbers.  (R. at 24–25.)  Because the hypothetical question posed to the VE was more restrictive or more favorable to Plaintiff than ALJ Paige's ultimate RFC assessment, ALJ Paige's error when posing the hypothetical question to the VE was harmless.  *See Bailey v. Saul*, No. 20-90-DLB, 2021 WL 2447082, at * 7 (E.D. Ky. June 15, 2021) (finding that "[b]ecause the RFC proposed to the VE as more favorable to Plaintiff than the RFC ultimately assigned in the hearing decision, no reversible error exist[ed]."); *Alvarado v. Comm'r of Soc. Sec.*, No. 20-11717, 2021 WL 1398229, at * 15 (E.D. Mich. Feb. 18, 2021) (finding that "[i]t stands to reason that if a more restrictive hypothetical inquiry produces a substantial number of jobs in the national economy, than a lesser restrictive RFC would not reduce the same."), *report and recommendation adopted*, 2021 WL 138770 (E.D. Mich. April 13, 2021); *Dell v. Comm'r of Soc. Sec.*, No. 3:18CV1069, 2019 WL 3068614, at * 10 (N.D. Ohio July 12, 2019) (finding harmless error where ALJ asked VE about an individual who could not climb ropes or stairs but then determined that plaintiff could not climb ropes, ladders, or scaffolds; question to VE was more restrictive than the ALJ's RFC assessment); *Allen v. Colvin*, No. 3:10–cv–1024, 2014 WL 1775564, at *25 (M.D. Tenn. Apr. 29, 2014) ("Because the plaintiff had an RFC that was greater than that required to perform sedentary work, the ALJ was permitted to rely on the VE's testimony regarding the availability of sedentary jobs.").  *See also McVey v. Comm'r of Soc.* Sec., No. 2:10-CV-231, 2012 WL 966484, at *3 (E.D. Tenn. Mar. 21, 2012) ("contrary to Plaintiff's argument that the ALJ left out relevant limitations in posing his hypothetical questions, it appears the ALJ actually imposed more, presumably making the hypotheticals even more favorable to Plaintiff than his RFC determination. After reviewing the record, this Court concludes the ALJ properly determined

24

Plaintiff had the RFC to perform her past relevant work and his determination was supported by substantial evidence.")  Accordingly, the Undersigned finds that any error was harmless and does not warrant remand.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that ALJ Paige did not commit reversible error when denying Plaintiff's application for benefits.  Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

January 3, 2022                                         *s/ Elizabeth A. Preston Deavers*
                                                        Elizabeth A. Preston Deavers
                                                        United States Magistrate Judge